IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD DAVIS, ALLEN CHAPMAN, SUA TUALA, DANIEL MCKINNEY, RUBEN IBARRA, DEZMON EPPS, and ROBERT BURTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated Association, MARK G. YUDOF, an individual in his official capacity as President of the University of California, *et al.*, and also as representatives of all others similarly situated,<br><br>Defendants.<br>_____/ | No. C 11-01207 WHA<br><br>**ORDER GRANTING MOTION TO DISMISS** |

**INTRODUCTION**

In this purported civil-rights class action, plaintiffs challenge the enactment and application of NCAA Division I Bylaw 14.5.4.2, which governs the eligibility of certain transfer students for athletic scholarships and participation. For the reasons stated below, defendants' motion to dismiss the complaint is **GRANTED**.

**STATEMENT**

The National College Athletic Association is an unincorporated association of public and private colleges and universities. The NCAA "markets, regulates, governs, controls, operates and

licenses" the athletic programs at its member colleges and universities (Amd. Compl. ¶ 13). NCAA membership is classified into three divisions, of which Division I is the largest. Division I "includes four-year institutions which compete at the highest level of college sports" and "participate in high-profile events." Division I is composed of 335 member institutions, two-thirds of which are public colleges or universities (*id.* at ¶¶ 38–39).

Each division of the NCAA has its own eligibility rules for student-athletes. This action concerns NCAA Division I Bylaw 14.5.4.2, which sets forth the eligibility requirements for certain student-athletes wishing to transfer from a two-year college to a four-year Division I college. At the time of matriculation from high school to college, each student-athlete is either a "qualifier" or a "non-qualifier" for Division I athletic scholarships, practice, and competition, based on his or her academic performance in high school. A qualifier is someone who has graduated high school, completed a certain number of core courses (including four years of English and three years of mathematics), and attained a minimum grade point average and SAT score. A non-qualifier is someone who has failed to meet one or more of those requirements (Walters Exh. A at 163).[1]

If a non-qualifier attends a two-year college immediately after high school, but later wishes to transfer to a four-year Division I school and participate in Division I athletics, his or her eligibility for athletic scholarships and participation is determined by NCAA Division I Bylaw 14.5.4.2. This bylaw was amended in August 2009. Before amendment, it required the student to have (1) graduated from the two-year college, (2) completed a minimum of 48 semester-hours or 72 quarter-hours of transferable degree credit, (3) spent at least three semesters or four quarters as a full-time student, and (4) achieved a grade point average of at least 2.0 on a four-point scale. The August 2009 amendment added the additional requirement that the

---

[1] The exhibits to the Walters declaration are excerpts from the NCAA Division I, II, and III manuals in which the NCAA bylaws relevant to this action are set forth. Although these documents were not appended to the complaint, the parties agree that the complaint incorporated the text of the relevant NCAA bylaws by making extensive reference to them (Br. 5 n.1; Opp. 8). The parties are correct. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (internal citations omitted).

2

1    student's transferable degree credit earned at the two-year college must include (a) six semester-
2    hours or eight quarter-hours of English credit and (b) three semester-hours or four quarter-hours
3    of math credit (Walters Exh. B at 156–57). This additional requirement generally translates to
4    two English classes and one math class. At the hearing, counsel stated that a waiver provision in
5    the NCAA rules allows the requirements of Bylaw 14.5.4.2 to be waived as to specific individuals
6    in certain circumstances.

7    If a non-qualifier attends a four-year college immediately after high school and later
8    wishes to participate in a Division I athletic program, his or her eligibility is determined by
9    different bylaws. To become eligible for athletic scholarships and participation, the student must
10   complete one year in residence at the four-year school during which he or she earns a minimum
11   amount of degree credit and achieves a minimum grade point average. No substantive curriculum
12   requirements apply (Walters Exh. A at 167–69, 172).

13   Similarly, if a qualifier attends a two-year college immediately after high school, yet
14   another set of requirements govern his or her eligibility to participate in Division I athletics upon
15   transfer to a four-year Division I school. The student must spend at least one semester or quarter
16   as a full-time student at the two-year school, and he or she must earn a minimum amount of
17   degree credit and achieve a minimum grade point average. The student, however, need not stay at
18   the two-year school long enough to earn a degree, and no substantive curriculum requirements
19   apply to the transferable credits earned there (*id.* at 176–77).

20   Plaintiffs seek to represent a class of non-qualifier student-athletes who enrolled in two-
21   year colleges *after* the August 2009 amendment to Bylaw 14.5.4.2 took effect. Plaintiffs wish to
22   transfer to four-year Division I colleges and participate in their athletic programs. Plaintiffs,
23   however, have failed to satisfy the academic requirements of Bylaw 14.5.4.2 and therefore are not
24   eligible to receive athletic scholarships or participate in athletic programs at Division I schools
25   (Amd. Compl. ¶ 28).

26   Plaintiffs challenge the adoption and application of Bylaw 14.5.4.2 as violating both the
27   United States Constitution and the California State Constitution. Specifically, plaintiffs allege
28   that the bylaw impermissibly singles out and discriminates against non-qualifiers who attend two-

3

year colleges, in violation of both the equal protection clause of the Fourteenth Amendment and Article I, Section 7(a) of the California Constitution (*id.* at ¶¶ 53–62). Plaintiffs clarified at the hearing that they challenge three aspects of the bylaw: (1) the requirement that students spend at least three semesters as full-time students at the two-year college; (2) the requirement that they earn an associate's degree from the two-year college; and (3) the requirement that they take a minimum number of English and math courses. Plaintiffs filed this action in April 2011, naming the NCAA and individual representatives of eighteen California State Division I colleges as defendants. Plaintiffs seek certification of a defendant class as well as a plaintiff class (*id.* at ¶¶13–23).

All named defendants move to dismiss the amended complaint on a variety of grounds; plaintiffs oppose. This order follows full briefing and oral argument on the motion.

## ANALYSIS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that a defendant is liable for the misconduct alleged. Although a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The parties agree that the rational-basis review standard, rather than any heightened review standard, applies to plaintiffs' federal equal protection claim. Under that standard, any state action resting upon a distinction between classes of people "must be rationally related to a legitimate governmental purpose." *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446 (1985). The party challenging a distinction bears the burden of proving that there is no reasonable basis for it. *Heller v. Doe*, 509 U.S. 312, 320 (1993). The reviewing court defers to legislative judgment if there is at least a debatable question whether the underlying basis for the classification is rational. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 465, 464 (1981).

4

The Rule 12(b)(6) and rational-basis standards both govern the instant motion. In order for plaintiffs' federal equal protection claim to survive defendants' motion, the amended complaint must plead sufficient facts and inferences to make it *plausible* that Bylaw 14.5.4.2 is not rationally related to any conceivable legitimate purpose. It does not.

The complaint itself acknowledges that the August 2009 amendment to Bylaw 14.5.4.2 was proposed to "help ensure that students who were not qualifiers have the academic tools for success" they would need as Division I student-athletes (Amd. Compl. ¶ 46). This goal is a legitimate purpose, and the challenged requirements of Bylaw 14.5.4.2 are rationally related to serving it.

The challenged bylaw concerns only those students who (a) emerged from high school as academic non-qualifiers, *and* (b) proceeded to two-year rather than four-year institutions of higher education. That students in this category should meet specific requirements to show they are equipped to succeed as student-athletes at four-year Division I schools is rational. As compared to qualifiers who initially attended two-year schools, these students had *not* yet proven their readiness to succeed as Division I student-athletes upon departure from high school. As compared to non-qualifiers who initially attended four-year schools, these students have *not* directly shown whether they can succeed academically at a four-year institution. Instead, they must prove themselves indirectly. The requirements of Bylaw 14.5.4.2 serve to identify those students who have done so.

All three challenged aspects of the bylaw are rationally related to this legitimate purpose. The requirement that students spend at least three semesters as full-time students at the two-year college is rationally related to preparing for the demands of being a full-time rather than part-time student. The requirement that they take a minimum number of English and math courses is rationally related to acquiring the skills necessary to complete academic course work at a four-year college. The requirement that they earn an associate's degree from the two-year college is rationally related to building a record of credentials.

Plaintiffs vigorously attack the distinction between two-year and four-year schools, arguing that "a more expensive education is not always better" (Opp. 21). Expense, and even

5

quality of education, do not control the question at hand. Two-year and four-year institutions of higher learning have different missions. They offer different types of degrees and training. Many two-year schools are vocationally oriented, whereas four-year schools tend to be more academically oriented. Many two-year schools offer part-time enrollment programs, whereas four-year schools tend to require full-time study. Without attempting to compare the average cost and quality of the education offered by two-year and four-year institutions, this order finds that the educations they provide are different in kind, or so the NCAA could reasonably have found. Defendants' distinction between two-year and four-year schools is rational.

Plaintiffs also allege that the requirements of Bylaw 14.5.4.2 were adopted without "consideration of any studies or other analysis" of their likely effect (Amd. Compl. ¶ 46). As plaintiffs concede, however, a challenged measure need not be based on any factual findings or review of evidence in order to survive rational-basis review (Opp. 19–20). *Fed. Commc'ns Comm'n v. Beach Commc'ns*, 508 U.S. 307, 315 (noting that a legislative choice "may be based on rational speculation unsupported by evidence or empirical data"). Moreover, as described above, the requirements of the challenged bylaw — including the newer English and math requirements — *are* rationally related to the legitimate purpose of ensuring that non-qualifier student-athletes who transfer into Division I programs from a two-year colleges are equipped for academic success.

Plaintiffs emphasize that the students subject to Bylaw 14.5.4.2 tend to come from disadvantaged backgrounds. The complaint alleges that "[f]or many young women and men — a disproportionate number of whom are from communities of color or grew up in an at-risk environment — athletic-based financial aid provides their only chance for obtaining a college education." Because of their financial circumstances, "enrolling at junior college is their only option for continuing their education after high school and their last meaningful chance for success" without an athletic scholarship (Amd. Compl. ¶ 1). According to plaintiffs, the challenged bylaw places an unfair barrier between these students and a Division I athletic scholarship.

6

It is true that the individuals plaintiffs describe face a difficult road to success. The Court is sympathetic to the many challenges they face. Such allegations of hardship, however, do not state an equal protection claim. They do not undermine the rational basis for the challenged bylaw. Furthermore, the NCAA bylaws explicitly do *not* prevent non-qualifiers from accepting *need-based* (as opposed to athletic-based) financial aid from Division I schools (Walters Exh. A at 167). In this respect, the bylaws leave these disadvantaged individuals with the same educational options as their peers who lack the good fortune of athletic talent.

Plaintiffs' allegations fall far short of negating every conceivable rational basis for the challenged bylaw. As explained, this order rejects plaintiffs' contention that the classifications created by the bylaw — whether students were academic qualifiers or non-qualifiers, and whether they attended two- or four-year institutions immediately after high school — are arbitrary (Opp. 18). Also rejected is plaintiffs' argument that the fit between the requirements of the challenged bylaw and its stated goal "is so imperfect that it undermines completely the credibility of the expressed goal" (Opp. 19). Plaintiffs' theories as to why NCAA Division I Bylaw 14.5.4.2 violates the equal protection clause fail. Because the challenged bylaw does not violate the equal protection clause, the parties' arguments concerning whether the NCAA is a state actor need not be reached.

Because the federal claim fails, this district court will not exercise supplemental jurisdiction over the state claim. 28 U.S.C. 1367(c)(3). Plaintiffs "acknowledge that the Court would not retain supplemental jurisdiction over purely state law issues if the federal claim is dismissed as to all defendants" (Opp. 3). Indeed, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — point toward declining to exercise jurisdiction over the remaining state-law claim. These factors usually discourage the exercise of federal jurisdiction when all federal-law claims are eliminated before trial. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010). Here, the federal-law claim was eliminated while the action was in its infancy and before the state-law claim was considered. It is best to leave full consideration of the state-law claim to the state

7

courts. No diversity jurisdiction exists, either. The parties' arguments concerning the state claim therefore need not be discussed.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is **GRANTED** without prejudice to re-filing the state claim in state court. Because the federal claim fails based on plaintiffs' theory of the case (rather than the adequacy of the pleadings), amendment of the complaint ordinarily would not be allowed due to futility. At the hearing, however, counsel stated that the NCAA is poised to adopt yet another rule which would make the challenged requirements more stringent. Given this development, plaintiffs may seek leave to re-plead. If plaintiffs so choose, they should file a motion for leave to amend the complaint within **28 CALENDAR DAYS**. The motion should be filed on the normal 35-day track, and a proposed amended complaint must be appended to the motion. The motion should clearly explain why the proposed amendments overcome the deficiencies discussed herein. If no motion is filed, or if the motion is denied, judgment will be entered.

**IT IS SO ORDERED.**

Dated: June 24, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8